■ In the Matter of the Estate of Leo Williams, Deceased. Public Administrator of the County of New York, Respondent; Janie Y. Callaham, Appellant, and Leodia McGowan et al., Respondents. [665 NYS2d 656] —Order, Surrogate's Court, New York County (Renee Roth, S.), entered May 30, 1996, which, to the extent appealed from as limited by the briefs, confirmed the report of the Court Attorney/Referee denying cross-petitioner's application to supersede the Public Administrator as administrator of the estate of decedent Leo Williams, unanimously reversed, on the law and the facts and in the exercise of discretion, with costs, the application to supersede the Public Administrator is granted and cross-petitioner should be issued letters of administration in accordance herewith.

On August 29, 1994, the decedent Leo Williams ("decedent") died as a result of a fall at a construction site. On or about August 31, 1994, the decedent's brother and father, cross-respondents Shawn Williams and Leodia McGowan, retained the law firm of William Pagan & Associates, P. C. ("Pagan Firm") to prosecute an action for the decedent's wrongful death. Meanwhile, on September 8, 1994, petitioner Janie Yates Callaham ("Callaham") retained the law firm Trief & Olk ("Trief Firm") to prosecute the wrongful death action on behalf of her granddaughter Tiffany Yates ("Tiffany"), who was the non-marital daughter of the decedent.

On September 22, 1994, an attorney with the Trief Firm informed a representative of the Pagan Firm that Callaham would be petitioning the court to be appointed as administratrix of the estate, and would prosecute the wrongful death action on Tiffany's behalf. Nonetheless, the next day, September 23, 1994, the Pagan Firm contacted the Public Administrator of the County of New York ("Public Administrator"), informing that office of the decedent's death and its retention by the decedent's father and brother for the purpose of commencing a wrongful death suit. The Pagan Firm identified the wrongful death action as the sole asset of the estate, and further identified Leodia McGowan as the father of the decedent, and Tiffany

Yates as the alleged non-marital daughter. The Public Administrator was also made aware that Tiffany resided with her maternal grandmother at a specified address.[1] Immediately thereafter, the Public Administrator contacted the Surrogate's Courts in New York and Kings Counties and determined that no guardian had been appointed for Tiffany, nor had any petition for such appointment been filed.

Three days later, on September 26, 1994, the Public Administrator prepared a petition requesting that it be appointed as administrator of the estate of the decedent. On September 27, 1994, a Notice of Petition was mailed to Callaham by regular mail. The Public Administrator's petition was granted the following day, September 28, and the Pagan Firm was retained to represent the estate in the wrongful death action. Callaham states that she did not receive notice of the Public Administrator's petition until after September 28, when it was granted.

On December 7, 1994, Callaham's petition to be appointed as Tiffany's guardian was granted. According to Callaham, this appointment was obstructed and delayed by decedent's father, McGowan, who refused to provide the decedent's death certificate.

On January 24, 1995, Callaham cross-petitioned, in her capacity as Tiffany's guardian, to supersede the Public Administrator as administrator of the estate. The Public Administrator opposed the cross petition, and subsequently moved to dismiss it on the ground that neither Callaham nor Tiffany was an eligible distributee under SCPA 1121. The Surrogate's Court referred the issue of paternity to a Court Attorney/Referee for determination. A hearing was held on four dates between May 1 and August 9, 1995, during which attorneys for the Public Administrator and from the Pagan Firm (on behalf of decedent's brother and father) extensively cross-examined Callaham's witnesses. Additionally, decedent's father McGowan submitted an affidavit denying knowledge as to whether Tiffany was the decedent's daughter. Although the Pagan Firm acknowledged the inherent conflict of interest surrounding its representation of both the estate in the wrongful death action and the decedent's father at the kinship hearing, the Public Administrator declined to adjourn the hearing or make other arrangements for legal representation.

The Trief Firm alleges that since shortly after the decedent's

---

**1.** There is some evidence in the record that the Public Administrator was also informed, prior to its filing of the petition, that Callaham intended to petition for letters and had retained counsel. The Public Administrator does not specifically deny this.

death, the Pagan Firm pressured Callaham to agree to a deal in which the Pagan Firm would receive 50% of the legal fee for the wrongful death action (which the Pagan Firm eventually commenced on May 2, 1995), in exchange for a recognition of Tiffany's status as decedent's daughter. The Public Administrator's attorneys also participated in these "settlement" discussions.

The Court Attorney/Referee issued her report on January 23, 1996. Although she determined that Tiffany was decedent's daughter by clear and convincing evidence, she denied the application to supersede. The Court Attorney/Referee ruled that Callaham was not entitled to receive letters under SCPA 1121 because (1) Tiffany's status as a distributee had not been determined within the four-month statutory period; (2) Callaham had not established that no other distributees existed; and (3) Callaham had failed to show that she had not been given notice of the Public Administrator's petition. The Court Attorney/Referee recommended that the court, in the exercise of its discretion, should decline to supersede the Public Administrator and should continue the representation of the Pagan Firm to preserve the continuity of the litigation and prevent delay.

Callaham moved to modify that portion of the Court Attorney/Referee's report recommending against superseding the Public Administrator. The Surrogate's Court denied the motion, confirming the findings of the Court Attorney/Referee that Tiffany's status had not been determined within the four-month period and Callaham had not established that she was not given notice of the petition. The court stated that the continued appointment of the Public Administrator was the best means of achieving a smooth and efficient administration of the estate.

On appeal, Callaham argues that she was entitled to supersede the Public Administrator as a matter of law. Alternatively, she asserts that the Surrogate abused her discretion in denying the application to supersede, given that the Public Administrator and the Pagan Firm had acted adversely to Tiffany's interests throughout these proceedings. We agree with Callaham that the Surrogate improvidently exercised its discretion in denying her application to supersede, and accordingly, we reverse.

SCPA 1121 provides that where an "eligible distributee of the decedent" petitions to supersede the public administrator within four months after the public administrator has been issued letters of administration, letters "shall be granted" to the distributee upon a showing that the petitioner did not receive

notice of the public administrator's application and that all persons prior to or equal in right have defaulted or waived letters. However, "the court may refuse to supersede the public administrator if 6 months have elapsed since he became vested with the powers of a fiduciary" (SCPA 1211).

The record demonstrates that Callaham's cross petition met all of the requirements of section 1121. Upon her appointment as Tiffany's guardian in December 1994, Callaham became authorized to petition for letters of administration as guardian of the sole distributee (SCPA 1001 [2]). The Surrogate's reliance on the fact that Tiffany's status as an eligible distributee had not been judicially determined within the statutory four-month period was erroneous. There is no dispute that the cross petition itself was timely filed within the four-month period. Moreover, overwhelming evidence existed that Tiffany was the decedent's daughter. Several witnesses testified that decedent openly and notoriously acknowledged that Tiffany was his daughter (see, EPTL 4-1.2 [a] [2] [C]). Further, decedent's own family referred to Tiffany as his "precious daughter" in his obituary, and both the petition and cross petition referred to Tiffany as the "non-marital daughter" of the decedent. The affidavit of decedent's father denying knowledge of the relationship flies in the face of this evidence, and apparently was used as a bargaining chip in an effort to retain control over the wrongful death action. We believe that Callaham made a sufficient showing in her cross petition that Tiffany was an "eligible distributee" to satisfy that statutory requirement. Any delay in the paternity determination, hotly contested by the Public Administrator and the decedent's family, was not the fault of Callaham.

We also find, contrary to the Surrogate's view, that Callaham established that she had not received notice until *after* the Public Administrator's petition for letters was granted. A copy of the Notice of Application For Letters of Administration was mailed to Callaham on September 27, 1994, and the Surrogate signed the Decree Granting Letters of Administration on September 28, 1994. In an affidavit, Callaham swore that she did not receive the Notice until after September 28. As it is highly unlikely that Callaham received the Notice within one day by regular mail, satisfactory proof exists that she was not given notice.

While Callaham's cross petition makes no mention of the requirement that all persons prior to or equal in right have been served and defaulted or waived letters, there is no indication in the record that any such persons exist. Accordingly, we

agree with Callaham that she has satisfied the requirements of SCPA 1121.

As noted, however, the statute vests the Surrogate with discretion to deny a motion to supersede if six months have elapsed since letters were issued to the Public Administrator (SCPA 1121).[2] In determining the application to supersede, the Surrogate identified its concerns as "the smooth administration of the estate, timely resolution of the wrongful death action and distribution to decedent's daughter, Tiffany Yates." In our view, however, the latter concern was inappropriately subordinated to the former ones. The Pagan Firm, retained by the Public Administrator to represent the estate, has taken positions directly adverse to the interests of Tiffany and Callaham. It attempted to pressure Callaham into signing papers, it apparently failed to disclose to the Public Administrator that Callaham was intending to petition for letters and it supported its client Leodia McGowan in contesting Tiffany's status and used that issue as a bargaining chip for legal fees. The Pagan Firm itself recognized that a blatant conflict of interest existed.

The Public Administrator has, at a minimum, acquiesced in these actions. While it claims to have investigated whether a guardian was appointed for Tiffany in the Surrogate's Courts, it did not take the simple step of contacting Callaham herself in an effort to determine whether she would be petitioning to be appointed Tiffany's guardian. Rather, despite its knowledge that decedent had an infant non-marital daughter at the time of his death, the Public Administrator sent a last-minute notice to Callaham and speedily prepared its own petition for letters. Its position that Callaham was given proper notice of its petition for letters is dubious given the time frame of the mailing discussed above.

It must be remembered that Tiffany was the sole distributee of an estate whose only asset was a wrongful death action. Since the damages recoverable in a wrongful death action are " 'exclusively for the benefit of the decedent's distributees' " (*Hernandez v New York City Health & Hosps. Corp.*, 78 NY2d 687, 693; EPTL 5-4.1, 5-4.4), it is Tiffany's interests that should have been given paramount, if not singular, importance.

---

2. Callaham argues that the Surrogate's discretion was never triggered because she filed the petition within the six-month period. The statute is unclear as to whether it is the filing of the petition, or the final determination, which must be made within six months to prevent the triggering of the Surrogate's discretion under SCPA 1121. We need not decide this question of statutory interpretation since we believe the application to supersede should have been granted even under a discretionary standard.

Tiffany has expressed her desire that Callaham, her grandmother and guardian, should represent her interests. In failing to give greater consideration to the interests and desires of the sole distributee and her guardian, we believe the Surrogate abused its discretion in denying the application to supersede (*see, Matter of Taormina*, 2 AD2d 711, *affd* 2 NY2d 878 [where only persons interested in estate and proceeds of wrongful death action have designated attorney to receive letters, the designee should be appointed and the Public Administrator superseded]; *Matter of Kells*, 19 Misc 2d 511). Concur—Nardelli, J. P., Mazzarelli, Andrias and Colabella, JJ.